UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WHITT MACHINE, INC. :
: NO. 1:08-CV-00439
    Plaintiff, :
:
  v. : **OPINION AND ORDER**
:
ESSEX INSURANCE CO. :
:
    Defendant. :


This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (doc. 10), the Affidavit of Angela Whitt Snarski (doc. 11), Defendant's Response in Opposition (doc. 13), and Plaintiff's Reply (doc. 16). Also before the Court is Defendant's Motion for Partial Summary Judgment (doc. 12), Defendant's Factual Stipulations (doc. 9), Plaintiff's Response in Opposition (doc. 14), and Defendant's Reply (doc. 15). The Court has reviewed all of these documents in arriving at its decision. For the reasons indicated herein, the Court DENIES Plaintiff's Motion for Partial Summary Judgment and GRANTS Defendant's Motion for Partial Summary Judgment.

**I. Background**

Plaintiff Whitt Machine, Inc. ("Whitt"), owns real property and improvements located at 800/806 Central Avenue, Middletown, Ohio (the "Building") (doc 9). Plaintiff obtained insurance policy number 1CJ7894 (the "Policy") from Defendant Essex

Insurance Co. ("Essex") for the Building (Id.). The Policy was in full force and effect from February 16, 2007, through February 16, 2008, and covered, among other casualties, losses due to fire (Id.).

At issue in this case are three provisions of the Policy. The first involves the Policy's Limits of Insurance provision, which provides in relevant part:

> C. LIMITS OF INSURANCE
>
> The most we [Defendant] will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.
>
> * * *
>
> The limits applicable to the Coverage Extensions and the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance. Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:
>
> * * *
>
> 2. Debris Removal; but if:
>
>    a. The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or
>
>    b. The debris removal expense exceeds the amount payable under the 25% limitation in the Debris Removal Additional Coverage;
>
>    we will pay up to an additional $10,000 for each location in any one occurrence under the Debris Removal Additional Coverage.

(Id.). The Declarations section of the Policy sets a $600,000

limit of insurance for the Building (Id.).

The second Policy provision at issue is "Additional Coverages." The Policy provides:

> 4. Additional Coverages
>
>   a. Debris Removal
>
>   (1) We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.
>
>   (2) The most we [Defendant] will pay under this Additional Coverage is 25% of:
>
>   (a) The amount we [Defendant] pay for the direct physical loss of or damage to Covered Property; plus
>
>   (b) The deductible in this policy applicable to that loss or damage.
>
>   But this limitation does not apply to any additional debris removal limit provided in the Limits of Insurance section.
>   (Id.)

The final Policy provision at issue is an endorsement entitled "Change in Conditions Endorsement" ("Endorsement"). The pertinent language is as follows:

> ATTACHED TO AND FORMING PART OF POLICY NO. 1CJ7894
>
> CHANGE IN CONDITIONS ENDORSEMENT
>
> Please read carefully as this changes coverage under you policy.
>
> ***

3

Property Pollution Exclusion

> This policy does not cover loss or damage caused directly or indirectly by the release or discharge or dispersal of toxic or hazardous substances, contaminants, or pollutants. Nor will we cover the loss of removal, disposal, decontamination or replacement of insured property which has been contaminated by toxic or hazardous substances, contaminates [sic] or pollutants and by law or civil authority must be restored, disposed of or decontaminated. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any way sequence to the loss.

(Id.)

On or about May 26, 2007, a fire destroyed the Building (Id.). Plaintiff promptly notified Defendant and timely submitted claims for damage to the Building, debris removal, additional debris removal, and pollutant cleanup (Id.). Defendant paid directly to Plaintiff, and to others on its behalf, $600,000 to cover the direct physical loss of the Building (Id.). In addition, Defendant tendered to Plaintiff a check in the amount of $10,000 to discharge its obligations under the Policy's Debris Removal Additional Coverage provision (Id.). Plaintiff has not accepted the check in anticipation of the resolution of this litigation (Id.). Plaintiff paid more than $200,000 to remove debris and clean up and remove asbestos from the Building (doc. 11). Defendant refused to cover Plaintiff's asbestos removal expenses and refused to pay more than $10,000 for debris removal (doc. 10).

Plaintiff brought suit in Ohio state court alleging breach of contract and bad faith in Defendant's refusal to cover the costs of debris removal and pollutant clean up in excess of the $600,000 Defendant has paid and the $10,000 Defendant has proffered (doc. 2). Plaintiff also sought punitive damages (Id.). Defendant removed the suit to this Court based on diversity of citizenship (doc. 1). The parties have filed cross motions for partial summary judgment as to Plaintiff's breach of contract claim. Both parties have also filed motions in opposition and replies to the respective motions for partial summary judgment such that this matter is ripe for the Court's review.

**II. ANALYSIS**

**A. The Summary Judgment Standard**

A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient

5

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Fatton v. Bearden, 8 F.3d. 343, 346 (6th Cir. 1993), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Garino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1982); Street v. J.C.D. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Shaeffer & Ebeling Co. L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence

of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th

Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

**B. Defendant's Motion for Partial Summary Judgment**

Plaintiff and Defendant both filed their cross motions for summary judgment on October 31, 2008 (docs. 10, 12). For purposes of efficiency, the Court will address Defendant's motion first, and will at points reference Defendant's Response to Plaintiff's motion (doc. 13).

8

Defendant moves the Court for partial summary judgment as to Count I of the Complaint for breach of contract (doc. 12). Defendant indicates it does not address the remaining claims for bad faith and punitive damages, as the parties agree that the remaining claims are moot should the Court grant summary judgment for Defendant as to Count I (Id.).

Defendant urges the Court to grant its motion because in its view, Plaintiff cannot create any genuine issues of material fact from the plain and unambiguous language of the Policy (Id.). Defendant argues there are two questions for the Court to decide: (1) the amount of debris removal coverage available under the policy; and (2) whether the Policy provided any pollutant removal coverage (Id.). Defendant contends the plain and unambiguous language of the Policy limits debris removal to $10,000 above the $600,000 already paid and the similarly unambiguous Endorsement excluded pollutant removal coverage (Id.). Defendant argues other Courts have interpreted identical provisions as unambiguous and construed them in favor of the insurer (Id. citing Strowig Properties, Inc. v. American States Ins. Co., 80 P.3d 72 (Kansas App. 2003) and Genovese v. Twin City Fire Ins., 1994 Conn. Super. Lexis 1228).

In response to Plaintiff's reliance on LGC Investments, Inc., LLC v. Merchants Mut. Inc. Co., 2006 WL 1508708 at *3 (N.J.Super.A.D. Jun. 2, 2006), a decision finding contract

9

provisions identical to those at issue in this case ambiguous under the "reasonable expectations" doctrine, Defendant argues such doctrine is inapplicable in Ohio (doc. 12). Defendant reviews Ohio contract law, arguing the rule of liberal construction of insurance policies may not be used to create an ambiguity where none exists (Id. citing Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co., 993 F.Supp. 1131 (N.D. Ohio 1998); Dunfee v. Midwestern Indem. Co., 70 Ohio App. 3d 301, 590 N.E.2d 1365 (1990)). Defendant also provides numerous examples of Ohio state courts' rejection of the "reasonable expectations doctrine" (Id. citing Park-Ohio Industries, Inc. v. Home Indem. Co., 975 F.2d 1215, 1223 (6th Cir. 1992) (applying Ohio law); Northbrook Excess & Surplus Ins. Co. v. Proctor & Gamble Co., 924 F.2d 633, 639-40 (7th Cir. 1991) (applying Ohio law); Wallace v. Balint, 94 Ohio St.3d 182, 189, 761 N.E.2d 598, 606 (Ohio 2002); Tamburino v. Grange Mut. Ins. Co., 1989 WL 3935 (Ohio App. 7th Dist. 1989); Sterling Merchandise Co. v. Hartford Ins. Co., 30 Ohio App. 3d 131, 506 N.E.2d 1192 (Ohio App. 9th Dist. 1986)). Ohio's refusal to accept the "reasonable expectations" doctrine, Defendant argues, renders Plaintiff's supporting case unpersuasive (Id.).

Defendant next addresses the effect of the Endorsement (Id.). Defendant argues the language of the Endorsement, which expressly bars coverage for discharge or dispersal of hazardous materials like asbestos, abrogated coverage of damage caused by the

release of pollutants (Id.). According to Defendant, the Endorsement became part of the Policy, and under Ohio law the Endorsement is controlling in the event of conflict with the Policy (Id. citing Golmolka v. State Auto. Mut. Ins. Co., 70 Ohio St.2d 166, 172 (Ohio 1982); Workman v. Republic Mut. Ins. Co., 144 Ohio St. 37, 46, 56 N.E.2d 190, 194 (Ohio 1944); Progressive Max Ins. Co. v. Grange Mut. Cas. Co., 2003-Ohio-4564, 15 (Ohio App. 8th Dist.); Baker v. Aetna Cas. & Sur. Co., 107 Ohio App. 3d 835, 669 N.E.2d 553 (Ohio App. 10th Dist. 1995); Brown v. Ohio Cas. Ins. Co., 63 Ohio App. 2d 87, 91, 409 N.E.2d 253, 256 (Ohio App. 8th Dist. 1978)). Plaintiff is not entitled to pollutant clean up payments, Defendant concludes, because the controlling Endorsement's plain language deleted such coverage (Id.).

Defendant also argues the Court should not find persuasive two other cases, Gonzales v. Western Mut. Ins. Co., 2004 WL 3019113 (Cal. App. 2004), and Lee v. American Family Mut. Ins. Co., 2008 WL 2704823 (D. Colo.), upon which Plaintiff relies (Id.). Defendant argues Gonzales is unpersuasive first because California courts accept the "reasonable expectations" doctrine and second because the policy at issue in Gonzales differs substantially from the Policy before this Court (Id.). Defendant argues that Lee is not on point, because the dispute in Lee, unlike the one before this Court, was over the timing of - not the entitlement to - pollutant removal expense payments (Id.).

**C. Discussion**

As an initial matter, the Court finds well-taken Defendant's argument regarding the "reasonable expectations" doctrine. Ohio law governs Plaintiff's claims, and Ohio courts do not follow the "reasonable expectations" doctrine. Wallace v. Balint, 94 Ohio St. 3d 182, 189, 761 N.E.2d 598, 606 (Ohio 2002) ("there is not yet a majority on this court willing to accept the reasonable-expectations doctrine").

In Ohio, the interpretation of an insurance contract is a legal question. Gencorp, Inc. v. American International Underwriters, 178 F.3d 804, 817 (6th Cir. 1999)(citing Leber v. Smith, 70 Ohio St. 3d 548, 639 N.E.2d 1159, 1163 (Ohio 1994)). Under Ohio law, courts must give effect to the parties' intent. Id. Accordingly, unambiguous contract terms are to be applied as-written, not interpreted. Id. at 818, (citing Timber Ridge Inv., Ltd. v. Marcus, 107 Ohio App. 3d 174, 178, 667 N.E.2d 1283, 1285 (Ohio App. 8th Dist. 1995)). Courts applying Ohio law must examine insurance contracts as a whole and presume the plain language of the document reflects the intent of the parties. Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 219, 797 N.E.2d 1256, 1261 (Ohio 2003).

Reading the Policy in its entirety, the Court agrees with Defendant that the language of the Policy is unambiguous. The

plain language of the Policy caps recovery at $600,000. Although the plain language of the Policy also provides for an additional $10,000 of Debris Removal coverage, Plaintiff may not take this provision out-of-context to recover losses the Policy plainly excludes. Thus, despite the Debris Removal Additional Coverage clause, the Policy explicity limits payments to $600,000 for direct losses and $10,000 for debris removal.

The Court also agrees with Defendant that the Policy's Limits of Insurance provision applies to the Debris Removal Additional Coverage provision. Thus, while it is true the Policy requires payment of 25% of the amount paid for direct physical loss, the plain language of the Policy states "[p]ayments under the following Additional Coverages will not increase the applicable Limit of Insurance: Debris Removal" (doc. 9). As noted above, Ohio law prohibits the Court from interpreting the plain and unambiguous language of this Policy. The Debris Removal Additional Coverage provision does not increase the Policy's $600,000 limit.

As for endorsements, Ohio law requires insurance contracts to be read in their entirety. "In determining the plain meaning of an insurance contract, the contract should be read as a whole and each word given its appropriate meaning, if possible." United States v. Strip, 868 F.2d 181, 185 (6th Cir. 1989) (citing Farmers' Nat'l Bank v. Delaware Ins. Co., 83 Ohio St. 309, 94 N.E. 834 (Ohio 1911)). A corollary to Ohio's approach to contract

interpretation is courts must consider endorsements a part of an insurance contract. Workman v. The Republic Mut. Ins. Co., 144 Ohio St. 37, 46, 56 N.E.2d 190, 194 (Ohio 1944) ("the policy and the endorsement are to be considered as component parts of a single contract"). When an endorsement conflicts with an insurance contract, the endorsement controls. Id. ("The endorsement must be regarded as a modification of the terms of the original contract of insurance if a clear inconsistency appears").

Accordingly, the Court finds the Endorsement governs this claim. The Endorsement plainly states it is "ATTACHED TO AND FORMING PART OF POLICY NO. 1CJ7894", which is the Policy at issue here. It is also clear from its plain language that the endorsement not only conflicts - but was meant to conflict - with the Policy. The Endorsement begins: "[p]lease read carefully as this changes coverage under your policy." The plain and unambiguous language of the Endorsement continues: "this policy does not cover loss or damage caused by ... the release or discharge or dispersal of ... pollutants." Thus, the Endorsement was intended to, and did, delete the Policiy's Pollutant Clean Up and Removal Additional Coverage. The Court concludes that the only possible meaning of the Endorsement is that the Policy does not cover damages caused by the release of pollutants.

The plain and unambiguous language of the Policy limits Plaintiff's recovery to $600,000. The only exception is a

14

provision for $10,000 in the event debris removal expenses exceed the Policy's $600,000 limit. It is uncontested that Defendant paid the $600,000 Policy limit and has attempted to pay $10,000 under the Debris Removal Additional Coverage provision. Plaintiff now seeks to recover over and above the obligations of the Policy. Plaintiff has failed to - and could not - create a genuine issue of material fact regarding Defendant's performance under the Policy. Defendant has not breached the plain and unambiguous language of the Policy. Therefore, Defendant's Motion for Partial Summary Judgment should be granted and Plaintiff's Motion for Partial Summary Judgment denied.

**IV. Conclusion**

The Court finds Defendant's position well-taken that the insurance policy at issue unambiguously excludes the coverage Plaintiff seeks. Plaintiff's motion relies on unpersuasive authorities that conflict with Ohio law. Accordingly, the Court DENIES Plaintiff's Motion for Partial Summary Judgment (doc.10), GRANTS Defendant's Motion for Partial Summary Judgment (doc. 12) and DISMISSES Plaintiff's breach of contract claim.

SO ORDERED.

Dated: April 14, 2009           /s/ S. Arthur Spiegel
                                S. Arthur Spiegel
                                United States Senior District Judge